(76 Hun, 80.)

### PEOPLE ex rel. KEHOE v. FITCHIE, Supervisor, et al.

(Supreme Court, General Term, Second Department.    February, 1894.)

1. OFFICE AND OFFICER—APPOINTMENT TO FILL VACANCIES.

Laws 1893, c. 35, providing that a person appointed to fill a vacancy shall hold his office until the beginning of the political year next succeeding "the next annual election after the happening of the vacancy," refers to the first election held after the vacancy occurs, though it occurred after the time when nominations could be made for such election.

2. SAME—FAILURE TO ELECT.

Where an appointment is made to fill a vacancy, and no one is elected to the office at the next election, the appointee is within Laws 1892, c. 681, § 5, which provides that every officer who has entered on the duties of his office shall continue to discharge them after the expiration of his term until his successor shall be chosen and qualified.

3. MUNICIPAL CORPORATIONS—VETO POWER OF MAYOR.

The mayor has power to veto the action of the common council in appointing officers to fill vacancies, though the power of the council to fill vacancy is not legislative, but executive.

Appeal from special term, Kings county.

Application by George Kehoe for writ of mandamus to compel Thomas Fitchie, as supervisor, and others to recognize relator as a supervisor of the Eighth ward of the city of Brooklyn. It appeared that a vacancy in the board of supervisors was caused by the death of one Stickevers on October 25, 1893, 12 days before the election day for that year (November 6, 1893), and on November 20, 1893, the common council appointed relator to fill the same. On December 29, relator resigned, and on the following day was again appointed supervisor for the Eighth ward by the common council. The application was denied, and relator appeals. Affirmed.

The opinion of Mr. Justice CULLEN at special term is as follows:

Had the relator seen fit to stand upon his original appointment, instead of resigning and receiving a subsequent appointment, his right to hold the office of supervisor until it might be filled at an election by the people would have been beyond controversy. That the office of supervisor of a city ward is not within the limitations and restrictions of article 10 of the constitution is settled by authority. People v. Board of Sup'rs, 139 N. Y. 524, 34 N. E. 1106; People v. Comstock, 78 N. Y. 356. The term of office of the relator is therefore wholly governed by the legislative enactments on the subject. I adhere to the view expressed on the argument as to the construction of the act of 1893, c. 35,[1] that "the first annual election after the happening of the vacancy" refers to the election itself, and not to the time prescribed in the election law of 1892 for the institution of the machinery for nominations, etc. It would not aid the relator's contention to construe the term "annual election" as "annual election at which the vacancy can be filled," for the statute of 1893 itself provides that the vacancy shall be filled at the general election "preceding such time," i. e.

---

[1] Laws 1893, c. 35, amending the charter of the city of Brooklyn, provides as follows: "Whenever a vacancy shall occur in the office of supervisor for any of the wards of said city such vacancy shall be filled by the common council. The person appointed to fill such vacancy shall hold his office by virtue of such appointment until the beginning of the political year next succeeding the first annual election after the happening of the vacancy, and if such vacancy shall exist after the commencement of said political year the same shall be filled at the general election next preceding such time."

the beginning of the next political year after the happening of the vacancy. To give effect to this claim I must hold that the direction as to "annual election" did not mean the occasion or time stated in the statute, but an entirely different time, to wit, the 15th day of October preceding the annual election. This is a license of construction for which there is no authority, especially when it is considered that there is a class of public offices, vacancies in which must by the constitution be filled at the annual elections, even if such vacancies occurred the very day before the election. I refer to those offices mentioned in article 10 of the constitution. Here the legislature, in the statute of 1893, has adopted the very words of the constitution, and I think that the same construction must obtain in one case as the other. But, though the term of office for which the common council could fill the vacancy was limited to the 1st of January ensuing, it does not follow that such term might not be extended. By the constitution (article 10, § 2), the legislature is granted complete power as to filling vacancies in office other than the offices mentioned in section 1. People v. Comstock, supra. The legislation on that subject is found in the provisions of the public officers law of 1892 (chapter 681), which, so far as material here, are substantially re-enactments of the Revised Statutes. The twentieth section of the act is as to the creation of vacancies. In the enumeration of events which shall render offices vacant a failure to elect a successor in office is not to be found. The reason of this is manifest. Section 5 of the same act provides that every officer (with certain exceptions, which do not include the office here in dispute), having entered upon the duties of his office, shall continue to discharge the duties after the expiration of his term until his successor shall be chosen and qualified, except that the office shall be deemed vacant for the purpose of choosing a successor. The electors of the Eighth ward failed to elect a supervisor at the last general election. This, under the provisions of the law cited, continued the term of any supervisor that might have been chosen by the common council of 1893, after the expiration of that year, until his successor should be elected, either at the general election or at a special election which the governor might order under section 4 of the election law. This brings us to the validity of the relator's appointment by the common council, and the question here involved is the power of the mayor to veto the action of the common council in making such appointment. As to this question I feel bound by authority, and not at liberty myself to determine it as an open question. It should be conceded as claimed that the power granted to fill vacancies in the office of supervisor is not legislative, but executive. On this ground it has been held at special term in two cases that the veto did not apply to appointments. Achley's Case (1856) 4 Abb. Pr. 35; North v. Cary (1874) 4 Thomp. & C. 357. Both decisions present strongly the arguments in favor of the position. But the reverse rule has been held by the courts in this district, and their decisions have been affirmed in the court of appeals. In Cassidy v. City of Brooklyn, 60 Barb. 105, it was held that the mayor could veto a consent of the common council to an appointment of a clerk made by one of the justices of the peace. This case was affirmed by the court of appeals (47 N. Y. 659) on the opinion below. The same question again arose in People v. Schroeder, 12 Hun, 413, affirmed 76 N. Y. 160, and the decision in the Cassidy Case was followed. In the opinion, delivered in the supreme court by Justice Gilbert, it is said: "The reasoning in Achley's Case (4 Abb. Pr. 35), so far as it went to restrict the operation of a similar provision of a statute relating to the city of New York to resolutions of a legislative as contradistinguished from those of an executive nature, must have been disapproved by the court of appeals. There is no such discrimination in the statute applicable to this case, and we cannot interpolate one into it." In the opinion delivered by Judge Miller in the court of appeals he says, referring to the acts of the common council: "The right to veto ordinances and resolutions clearly extended to all acts of that body, whether legislative or otherwise, and in no sense can the provision (of the charter) in act of 1873 constituting the common council be construed as interfering with the power of the mayor to interpose his objection to the appointment of the relator. The mayor had no right to act as a legislator, but he retained in full force the right to disapprove of all ordinances, acts, and resolutions which did not meet his approval." I do not see that this case can well be distinguished from those

cited, and I am constrained to hold the appointment of relator invalid. Motion denied, without costs. The respondent should stipulate to argue any appeal from this decision at the next general term.

Argued before BROWN, P. J., and DYKMAN and PRATT, JJ.

Stapleton & Miles, for appellant.
George F. Elliott, for respondents.

PER CURIAM. Order affirmed on opinion of CULLEN, J., at special term. All concur.