FRED A. RISSER, Chairman Committee on Senate Organization
On behalf of the senate committee on organization, you have requested my opinion whether a felony conviction of a member of the senate automatically creates a vacancy or whether further action is required by the senate to implement sec. 17.03 (5), Stats., and the Wisconsin Constitution relating to the qualifications of legislators (Article IV, Section 6) and eligibility to hold office (Article XIII, Section 3).
I assume your question relates to a recent instance where a state senator was convicted by a state court of and sentenced for two felonies, both of which were punishable by imprisonment for up to three years in state prison.
It is my opinion that upon conviction and sentencing, a vacancy is thereby created in the office of such state senator. Under the provisions of Art. XIII, sec. 3, and Art. XIII, sec. 10, Wis. Const., as implemented by sec. 17.03 (5), Stats., no further action is required by the state senate.
Article XIII, sec. 10, Wis. Const., reads:
 "Vacancies in office. SECTION 10. The legislature may declare the cases in which any office shall be deemed vacant, and also the manner of filling the vacancy, where no provision is made for that purpose in this constitution." (Emphasis added.) *Page 265 
Section 17.03 (5), Stats., provides in part as follows:
 "17.03 Vacancies, how caused. Any public office, including offices of counties, cities, villages, towns, school districts and vocational, technical and adult education districts shall become or be deemed vacant
upon the happening of any of the following events:
"* * *
 "(5) His conviction by a state or United States court of and sentence for treason, felony or other crime of whatsoever nature punishable by imprisonment in any jail or prison for one year or more, or his conviction by any such court of and sentence for any offense involving a violation of his official oath, in either case whether or not sentenced to imprisonment. A vacancy so created shall in no case be affected by a stay of execution of judgment . . . ." (Emphasis added.)
Section 939.60, Stats., defines a felony as follows:
 "Felony and misdemeanor defined. A crime punishable by imprisonment in the state prison is a felony. Every other crime is a misdemeanor."
Art. IV, sec. 6, Wis. Const., provides:
 "Qualifications of legislators. SECTION 6. No person shall be eligible to the legislature who shall not have resided one year within the state, and be a qualified elector in the district which he may be chosen to represent."
Art. IV, sec. 7, Wis. Const., provides, in part:
 "Organization of legislature quorum, compulsory
attendance. SECTION 7. Each house shall be the judge of the elections, returns and qualifications of its own members
1912 OAG 796 interpreted an earlier version of present day sec.17.03, Stats., and applied it to the office of state senator. That opinion concluded that when an event occurred which the statute specified as causing a vacancy, the office became vacantipso facto. This opinion further stated at p. 801:
 "`The legislature may declare the cases in which any office shall be deemed vacant, and also the manner of filling the vacancy.' Art. XIII, Sec. 10 Constitution. *Page 266 
 "This they have done by chapter 42 of the statutes. It is true that the constitution makes each house the sole judge of the election and qualification of its own members. Art. IV, sec. 7. This does not prevent the calling of the special election to fill the vacancy. The fact that a new member is elected does not give him any authority to act if in fact no vacancy exists. That question may still be passed upon by the senate."
See also 1912 OAG 790 and 3 OAG 760 (1914).
In my opinion, the general conclusions reached in 1912 OAG 796 still accurately state the law, although the statutory provisions involved have been altered somewhat in their detail in subsequent years.
Such interpretation follows from the unambiguous mandate of legislation which specifies the conditions under which an office "shall be deemed vacant."
This result is consistent with and supported by decisions in other jurisdictions. See McCluskey v. Hunter (1928),33 Ariz. 513, 266 P. 18, and authorities cited therein. In McCluskey, the statute provided that "An [incumbent's] office shall be deemed vacant" upon the happening of any of a number of events, including "His conviction of a felony . . . ." The court held that, on the happening of any such event, a vacancy in the office is created ipso facto, saying, at p. 21:
 "In providing that from and after the happening, before the expiration of the term, of any one of the ten events enumerated in 221 an office shall be deemed vacant, the Legislature meant that these events are merely conditions the legal effect of the occurrence of any one of which is to render the office vacant. To say that an office shall be `deemed' vacant upon the happening of a certain event is equivalent to saying that it shall be vacant when that event occurs, for the word `deemed' as used here means `treated as,' `regarded as,' `presumed' or `considered.' . . . When, therefore, an officer is convicted of a felony . . . or when in fact any one of the ten events mentioned in 221 happens during his term. the office occupied by him up to that time is in the eyes of the law vacant, and it is immaterial which one of the ten has occurred, for the Legislature has given them each the same effect, its purpose evidently being to provide that a vacancy *Page 267 
should arise just as surely upon the happening of any one of them as another. The language, `shall be deemed vacant,' is imperative in form and no other construction of it is possible.
This is not to say, however, that an incumbent of the office is necessarily precluded from showing, for instance, that the event relied upon to create the vacancy never occurred, though such circumstance should exist only rarely. Neither should the vacation be considered as a "removal" from office, since the latter is a distinctly different subject. McCluskey, p. 23. As stated by another court, in People v. Sharb (1893), 100 Cal. 537,35 P. 163, at 164:
 ". . . The 10 events mentioned in section 996 are merely conditions, upon the occurrence of any one of which the Legislature has declared the office shall become vacant, not as a penalty or forfeiture, but simply as the legal effect of the happening of any one of the events mentioned."
As pointed out in Becker v. Green County (1922), 176 Wis. 120,184 N.W. 715, sec. 17.03 (5), Stats., undoubtedly had its genesis in implementation of sec. 3 as well as sec. 10, Art.XIII, Wis. Const.:
 "Sec. 3, art. XIII, of the constitution provides that `no person convicted of any infamous crime in any court within the United States . . . shall be eligible to any office of trust, profit, or honor in this state.' By sec. 2, ch. 11, Revised Statutes of 1849, it was provided that `Every office shall become vacant on the happening of either of the following events before the expiration of the term of such office: . . . 5. His conviction of any infamous crime, or of any offense involving a violation of his official oath.' This provision has continued in the statutes without change until 1917, and is found as a part of sec. 17.02 of the statutes of that year. The constitutional provision disqualified the plaintiff from further holding the office of county judge, and the statutory provision referred to expressly provided that his office should become vacant upon his conviction of any infamous crime. We have no doubt that the crime of which he was convicted was infamous within the meaning of that term as used in the constitution as well as the statute. While there has been *Page 268 
much debate as to what constitutes an infamous crime, we think, by the great consensus of authority upon the subject, it is now deemed to mean as here used — a crime punishable by imprisonment in the state prison. 12 Cyc. 135; Words Phrases, 3573 et seq." Becker, supra, at 176 Wis., P. 124.
Thus, the term "infamous crime," as used in Art. XIII, sec. 3., Wis. Const., is synonymous with "felony," as that term is defined under sec. 939.60, Stats., and includes all felonies. See 63 OAG 75, 76 (1974), 41 OAG 181 (1952). An earlier opinion in 24 OAG 210 (1935) did conclude that the words "infamous crime" as used in Art. XIII, sec. 3, Wis. Const., were synonymous with the term "felony" as used in Art. III, sec. 2, Wis. Const., which latter term had been interpreted by the court as limited to such offenses as were felonies at the time the Constitution was adopted. However, that opinion erroneously relied upon a still earlier opinion, reported in 9 OAG 529 (1920), which was, in effect, repudiated by the holding in Becker, supra.
Based on the foregoing, I am of the opinion that the convictions referred to in your inquiry are felonies within the meaning of secs. 17.03 (5) and 939.60, Stats., and also "infamous crimes" within the meaning of Art. XIII, sec. 3, Wis. Const. I further conclude that a vacancy occurred in the office of the state senator involved upon his conviction and sentence for such crimes, pursuant to those provisions and Art. XIII, sec. 10, Wis. Const. Having so concluded, the question whether a vacancy would also have resulted from the senator's loss of elector status, under Art. III, sec. 2, Wis. Const., or Art. III, sec. 6, Wis. Const., and sec. 6.03 (1) (b), Stats., need not be discussed.
Finally, in Becker, supra, at p. 129, the court clearly stated the following in reference to the time such vacancy takes effect:
 ". . . It must be borne in mind that he was effectually divested of any right or title to the office. His status with reference to the office was fixed at the time of his conviction.
. . .
See also State v. Turner (1918), 168 Wis. 170, 169 N.W. 304, where it was held that under the terms of Art. XIII, sec. 3, acceptance of a federal office by a state officer ipso facto
vacated the latter office. *Page 269 
Although the conviction operates to vacate such office ipsofacto, the vacation does not interfere or conflict with the constitutional provision that each house shall be the sole judge of the elections, returns and qualifications of its own members. In the absence of a constitutional provision for that purpose, the legislature, exercising the legislative power the Constitution vested in the senate and assembly, may declare when a vacancy occurs. Art. IV, sec. 1, and Art. XIII, sec. 10, Wis. Const. It has done so in sec. 17.03, Stats., and has further directed that upon the happening of such vacancy notice thereof be given to appropriate public officials, including those authorized by law to cause such vacancies to be filled. Secs.17.01, 17.02 and 17.17, Stats. The authority for such legislative enactments emanates directly from the Constitution itself and such statutes in no way unconstitutionally delegate the determination of when a vacancy occurs. They constitute, as previously explained, the legislature's determination of those circumstances which cause a vacancy during the term. It has been held, in fact, that a constitutional provision, providing that no person convicted of an infamous crime "shall be eligible to the legislature, or capable of holding any office of trust or profit in this state," has the force of positive law declaring a fixed policy of the state limiting the power of the legislature in declaring who shall be eligible for such offices. State ex rel.Moore v. Blake (1932), 225 Ala. 124, 142 So. 418.
BCL:JCM